## Pennsylvania Hospital *against* Stewardson.

Testator directed the residue of his estate (after legacies) to be divided into five equal parts, in the manner afterwards directed, and gave one-fifth to each of his children and the descendants of his deceased children; and further directed, that after making a computation of his worldly substance, should it appear to his executors that each legacy, or one-fifth shall, after paying debts, amount to the sum of £10,000, then, if the surplusage is sufficient, a legacy of £300 is to go to the plaintiffs. He then appointed certain persons to make the valuation. This valuation never was made. At the testator's death, and for fifteen years after, the value of the whole estate, after debts paid, was not £50,000, and could not have been so valued: but at the time of this suit brought, in 1839, owing to judicious management, and rise in value of unimproved lands, the proceeds of the estate equalled £50,000. *Held,* the plaintiffs were not entitled to recover.

THIS was an action brought by the Contributors to the Pennsylvania Hospital against Thomas Stewardson, surviving executor of Henry Drinker, deceased, in which the following case was stated for the opinion of the court.

Henry Drinker, the elder, formerly of the city of Philadelphia, died in June 1809, having first made his last will and testament, bearing date the 28th of the 3d month 1808, which was afterwards duly proved, and letters testamentary granted to the executors.

The testator, after bequeathing sundry pecuniary legacies, gives and devises the residue of his estate in the following words: "And all the rest, residue, reversion, and remainder of my estate, real, personal and mixed, whatsoever and wheresoever, and of what nature, kind, and quality soever, shall be divided into five equal parts, in manner hereinafter directed, and I give, devise, and bequeath one-fifth part thereof to my son, William Drinker, his heirs, &c.; and I give, devise and bequeath one other fifth part thereof to my son Henry S. Drinker, his heirs, executors, administrators and assigns, for ever." One other fifth part he devises to trustees, for the use of his grandchildren, Elizabeth, Mary, Henry, Sarah, and Sandwith Downing, and their heirs. One other fifth part of the said residue he devises to trustees for the use of his daughter, Ann Skyrin, for life, and after her death, to the use of her children and their heirs; and one other fifth part to trustees for the use of his daughter, Mary Rhoads, for life, and after her death, to the use of her children and their heirs.

After these devises of his residuary estate, the testator's will proceeds as follows: "After making a reasonable, or rather a low computation and valuation of my worldly substance, it would seem as if such division or one-fifth part, devised as aforesaid to

my children and grandchildren, might be estimated to amount to not less than £10,000; yet the present gloomy state of public affairs, both as to this state and the General Government of the United States, is such as to forbid a dependence on the safety or value of landed property. Should it, however, appear to my executors that the legacies, or such one-fifth part of my estate, shall, after paying off and discharging all debts due from me, amount to the said sum of £10,000, then, and in that case only, my will is, that if the surplusage of my estate is sufficient therefor, that the following legacies be paid so soon as the said surplusage can conveniently be obtained for the said purpose, viz:—Item: I give and bequeath to the overseers of Friends' Public School, founded by charter in the town and county of Philadelphia, the sum of £300, to be paid to their treasurer for the time being, and to be applied by the said overseers as they may think will best serve and promote that useful and benevolent institution. Item: I give and bequeath to the contributors of the Pennsylvania Hospital the sum of £300, to be paid to their treasurer for the time being, to be applied towards carrying on the benevolent design of said Hospital."

The testator then proceeds in like manner to bequeath legacies, amounting in the whole to the further sum of £1100, to and for the use of other benevolent institutions or objects, and afterwards says: "In order that a just estimate and valuation may be made of the several parts of my real estate, and that the several proportions thereof hereby given and devised to my children and their heirs may be distributed amongst them agreeable to this my will, I request my friends, Thomas Morris, Thomas Stewardson, James Vaux, William Sansom, and my cousin, Henry Drinker, Jr., would, from the best information they can obtain, value the said several parts of my real estate, and to allot to each of my children and their heirs, his or her respective proportions thereof, as devised to them by this my will."

The will afterwards gives to the executors a power of sale of his real estate for the payment of his debts, and of certain pecuniary legacies, and appoints the testator's sons, William Drinker and Henry S. Drinker, his son-in-law, Jacob Downing, his cousin, Henry Drinker, Jr., and his friend, Thomas Stewardson, executors of the said will; of which said executors, the defendant, Thomas Stewardson, is, and for several years has been, the sole survivor.

The said Henry Drinker, the testator, died largely indebted, and the great bulk of his estate consisted of wild or unimproved lands in the state of Pennsylvania, which it became necessary from time to time to sell for the discharge of his debts.

The valuation of the several parts of the testator's real estate, directed or requested by his will, has never been made. At the decease of the testator, and for at least fifteen years thereafter, the value of the testator's estate, after paying his debts, was not,

[Pennsylvania Hospital v. Stewardson.]

upon a just estimate, equal to £50,000; and had a reasonable valuation thereof been made at his decease, or at any time within the term above-mentioned, and the fifth parts of the residue been allotted to and for the use of his respective children, the said respective fifth parts would not have been reasonably estimated, nor would they have been of the respective value of £10,000. And it did not appear to the executors, at any time within the said term, that "the legacies, or one-fifth part of the testator's estate would, after paying off and discharging all debts due from him, amount to the said sum of £10,000." And it would not have amounted to that sum in point of fact.

At the present time, owing to the judicious management of the real estate by the defendant, and the rise in the value of lands, the proceeds of the said estate, consisting partly of debts and partly of unsold lands, are equal to more than £50,000, and one-fifth thereof is equal to more than £10,000; but the same has not hitherto been divided or allotted to and among the residuary devisees, nor has anything been paid to the plaintiffs, or other contingent legatees.

The following questions are submitted for the court's opinion:

1. Whether, under the circumstances above stated, the legacy to the plaintiffs and the other contingent legacies have failed and are not recoverable; and if the court shall be of this opinion, judgment is to be entered for the defendant.

2. If the said legacies have not wholly failed, then, whether in addition to the £10,000 in value bequeathed, the legacies are entitled to any and what increase, by way of interest or otherwise, before the said contingent legacies shall be paid; and the court shall be authorized to appoint three or more persons as referees, to value the testator's real estate, and the effects proceeding therefrom, and to allot and apportion the same among the children and their trustees or representatives, according to such principles as the court shall state for their government.

It is agreed that the defendant and the parties interested shall be entitled to apply to the court for their instructions, until the final disposition of the case, and that the costs shall abide the judgment of the court.

*Lewis,* for the plaintiff.

The question is, when this valuation was to be made. The defendant must say at the time of the testator's death: but we say that is not necessarily the time. It may take place at any future time, and may be considered as made at present. If so, we are entitled. The legacy to us was vested, not contingent. The testator intended all should vest at the same time. In *Silsbee* v. *Silsbee,* (3 *Cranch* 249), words similar to these received a construction. The time there is held to be, when the funds are to be applied to their object. Here the testator was largely in debt,

and it took a great deal of time to settle the estate, and required the judicious management it has received. He referred to 4 *Watts* 144.

*Binney, Jr., contra.*

The legacy was conditional. It was to be paid, should it appear to his executors the estate was worth £50,000, after paying his debts. This never happened for 15 years. The great bulk was realty, and it is an absolute devise to his children and grandchildren. The rule is, that a will takes effect from the death of the testator, and the will therefore vested the whole on his decease. The personalty was exhausted. The devise can only be defeated by an express declaration by the testator. If 15 years are demanded, why not 50 years? Is the devise to be kept in abeyance for ever? The changes of value after the testator's death, were in respect to the property of the devisees, and they only were concerned, whether for profit or loss. In *Silsbee* v. *Silsbee*, the estate was clearly sufficient at the death of the testator, and moreover it was devised to the executors to be sold, who neglected to do so. Besides, the legatees stood in the more favoured light of specific legatees. He cited 9 *Watts* 476.

The opinion of the Court was delivered by

KENNEDY, J.—Admitting the legacy claimed by the plaintiffs to be vested, as it has been contended it is, yet it is clear, unless there be a sufficiency of assets to meet the payment of it, after satisfying all the preferred devisees and legatees, according to the clear and unambiguous meaning of the will, that the plaintiffs cannot recover. Before the legacy in question should be paid, it is perfectly manifest, the testator intended, after giving several pecuniary legacies to be paid out of his estate, that each of his four children, then living, should have a portion of the residue thereof, equal in value, at least, to £10,000, and that his five grandchildren named in his will, should also have jointly a like portion of equal value. For, after thus giving to each of his children a portion of his estate equal in value to £10,000, and a like portion thereof to his five grandchildren jointly, each of which portions he calls a fifth part of his estate, he says: "*Should it appear to my executors* that the legacies, or such fifth part of my estate, shall, after paying off and discharging all debts due from me, amount to the said sum of £10,000, *then,* and *in that case only,* my will is, that if the *surplusage* of my estate is *sufficient therefor,* that the following legacies be paid, so soon as the said surplusage can conveniently be obtained for that purpose. *Item:* I give and bequeath to the Contributors of the Pennsylvania Hospital the sum of £300," &c The plain, and, indeed, the necessary inference is, that in case it should appear otherwise to his executors, then the £300 claimed by the plaintiffs were not to be paid. From the case here, as stated, it seems that upon the death of the testator, and for at

least fifteen years afterwards, it did not only appear otherwise to the executors, that the estate was of insufficient value to yield portions to each of his children of the value of £10,000, but was so in fact. It is, however, alleged, that the estate, which consisted, at the death of the testator, chiefly of wild and uncultivated lands lying within the state, has increased, by mere lapse of time, so much in value, as to be amply sufficient to allow to each of the four children £10,000, and to the grandchildren jointly £10,000, and leave a surplus sufficient to meet the payment of the legacy in question, as also the other legacies given on the same condition. But certainly it cannot be supposed, that the testator intended the legacy in question should be paid if the estate which he should have, at the time of his death, should ever become, at any time thereafter, of sufficient value to afford his children and grandchildren their respective portions then, and leave a surplus sufficient to pay the legacy given to the plaintiffs. He certainly has not said so in his will; and it is equally certain that he never could have meant that it should be so. But it is contended, although such may not have been his meaning, yet as no division has been made of his estate among his children and grandchildren, by appraising and setting off to them severally their respective shares, that it is reasonable to infer, that the testator had the time, whenever it might happen, that this appraisement and division of his estate should be made among his children and grandchildren, as directed in his will, in his view as the time when it should be determined, from such appraisement, whether the legacy claimed by the plaintiffs should not be paid. And although no such appraisement has as yet been made, yet, inasmuch as it is admitted that the estate is now of sufficient value to admit of the legacy claimed by the plaintiffs being paid out of it, they are entitled to recover. This inference, however, would seem to be contrary to what must be considered the general intent of the testator, when we take into view the relation in which the principal devisees and legatees named in his will, stood to him. That it was his wish, that each of his children, and the grandchildren named in his will, should participate in the benefits that might be derived from the actual enjoyment of their respective portions of the estate allotted to them, cannot be questioned. Some of them had at most but a life-estate given to them; and unless we can believe that he was wholly indifferent whether they should ever derive any benefit from what he intended most clearly they should have, it is impossible even to suppose that he designed to defer the time thirty-two or three, or even fifteen years after his death, before it should be determined what particular part of his estate each should have, and whether the whole thereof would be of sufficient value to admit of the payment of the legacy demanded in this suit. Whether his estate should be sufficient for this purpose, was a matter which he seems to have left to the judgment of his execu-

III.— 13　　　　　I

[Pennsylvania Hospital v. Stewardson.]

tors; for he says: " Should it *appear to my executors*, that the legacies, or such *one-fifth of my estate*, shall, *after paying off and discharging all my debts* due from me, amount to the said sum of £10,000, *then and in that case only*, my will is, that if the *surplusage* of my estate is sufficient therefor, that the following legacies (including the legacy in question) be paid." It is clear, from the language employed here, the testator's wish was that as soon as all his debts were paid out of his estate, his executors should then determine whether the remaining part of it was sufficient to afford the portions allotted to his children and grandchildren, and leave at the same time a surplus sufficient to satisfy the legacy in question. Now the testator knew that the utmost length allowed by law to his executors, for the purpose of paying his debts and settling their administration account of his estate, was one year. It is therefore reasonable to conclude, that he did not intend that the time at which his executors should determine, whether the legacy could be paid or not out of his estate, should be deferred beyond the year. And had it appeared then to the executors, to be of sufficient value to have admitted of the payment of the legacy out of it, according to the direction of the will, a subsequent depression in the value of the estate would not have affected the plaintiffs' right, I apprehend, to demand and recover their legacy. So on the other hand, as I apprehend, they have no right to claim payment of it, because the estate has risen since in value so as to admit of its being paid, after setting off five portions thereof for the children and the grandchildren, of the value each of £10,000.

The end of the first year, therefore, after the death of the testator, must be regarded, we think, as the latest period allowed for making an estimate of the value of the estate, and for dividing and apportioning it among his children and grandchildren, as his devisees and legatees; and although this was not done at that time, it is necessary, in order to do equal justice to all concerned, according to the true intent and meaning of the will, to consider it all as having been done at that time. And it being perfectly clear, if it had been done then, that the plaintiffs would not have been entitled to claim anything, because there was nothing remaining agreeably to the tenor of the will out of which it could be paid, the judgment must therefore be entered for the defendant.

Judgment for the defendant.